**FILED**

SEP 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAMUEL LEE WHITE, | No. C02-02203 JW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | **[Re: Docket No. 18]** |
| TOM L. CAREY, Warden, | |
| Respondent. | |

Petitioner Samuel Lee White, a state prisoner incarcerated at the California State Prison in Vacaville, California, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed an answer. Petitioner has filed a traverse. Having considered all of the papers filed by the parties, this Court DENIES the petition on all claims.

**I. BACKGROUND**

Petitioner was charged with three counts of sales of cocaine base, and one count of possession of cocaine base for sale, in violation of California Heath & Safety Code §§ 11352 and 11351.5. The State agreed to dismiss all of the charges, except for one count of sale of cocaine base. In exchange, Petitioner agreed submit his case to the trial court for determination based upon the transcript of the preliminary hearing.

White was convicted in Santa Clara County Superior Court on the count of selling cocaine base in violation of California Health and Safety Code § 11352(a). The trial court

1   imposed sentence enhancements under California's "Three Strikes" law after finding that

2   Petitioner had prior felony convictions – a 1976 assault, a 1976 robbery and a 1986 robbery.  He

3   was sentenced to twenty-five years to life in state prison.

4         On his first appeal ("White I"), the California Court of Appeal held that the trial court's

5   finding that the 1976 assault conviction was a serious felony should be stricken.  It remanded

6   under Cal. Penal Code § 1385 and People v. Superior Court (Romero), 13 Cal.4th 497, 530, 53

7   Cal.Rptr.2d 789, 917 P.2d 628 (1996).  The trial court was instructed to decide whether to

8   dismiss either or both of the remaining prior serious felony convictions.  (Respondent's Ex. I).

9         On remand, the California Superior Court denied Petitioner's Romero motion to dismiss

10   his prior serious felony convictions and did not strike its previous finding that his 1976 assault

11   conviction was a serious felony under the Three Strikes Law.  Petitioner was resentenced to a

12   term of 25 years to life.  Although Petitioner's counsel was at the hearing, Petitioner was not

13   present.

14         On his second appeal ("White II"), the California Court of Appeal vacated the judgment

15   and remanded for further Romero proceedings because the State conceded that the trial court

16   erred in resentencing White without his presence.  (Respondent's Ex. II).

17         On remand, the Superior Court struck the earlier finding as to the prior assault

18   conviction, but declined to strike any other prior convictions.  White was again sentenced to a

19   term of 25 years to life.

20         In his third appeal ("White III"), the California Court of Appeal rejected Petitioner's

21   claims that (1) the trial court erred in choosing not to strike either of the remaining prior

22   convictions under Romero and (2) his sentence of 25 years to life constituted cruel and unusual

23   punishment.  The judgment was affirmed in part and remanded for recalculation and award of

24   sentence credits.  (Respondent's Ex. III).

25         On March 28, 2001, the California Supreme Court summarily denied White's petition

26   for review, citing no authority or reasons for its decision.  (Respondent's Ex. IV).

27         In the meantime, White filed a petition for writ of habeas corpus in the Santa Clara

28   County Superior Court, claiming that the trial court erred in denying his motion to relieve the

United States District Court

For the Northern District of California

1    public defender.  On January 30, 2001, the Superior Court denied the petition as procedurally

2    barred because the claim was not raised on direct appeal.  (Respondent's Ex. V).

3         On April 5, 2001, White filed a petition (and, about one month later, an amended

4    petition) for a writ of habeas corpus with the California Court of Appeal.  He realleged the

5    substitution of counsel claim and raised two additional claims:  ineffective assistance of trial

6    counsel and ineffective assistance of appellate counsel.  The appellate court summarily denied

7    the petition on June 8, 2001.  (Respondent's Ex. VI).

8         On July 2, 2001, White submitted a petition for writ of habeas corpus with the same

9    three claims to the California Supreme Court.  The California Supreme Court denied the petition

10   on October 31, 2001, citing In re Swain, 34 Cal.2d 300, 304 (1949) and In re Robbins, 18

11   Cal.4th 770, 780 (1998).  (Respondent's Ex. VII).

12        On May 7, 2002, Petitioner filed a federal habeas petition with this Court.  That petition

13   was dismissed because it contained both exhausted and unexhausted claims.  See Rose v.

14   Lundy, 455 U.S. 509, 522 (1982) (a mixed petition – one containing both exhausted and

15   unexhausted claims – must be dismissed without prejudice).  Specifically, this Court found that

16   Petitioner had not exhausted his claims that (1) the trial court was biased in failing to strike his

17   prior convictions and violated his Fourteenth Amendment rights; (2) the trial court's denial of

18   his motion to substitute counsel violated his Sixth and Fourteenth Amendment rights; (3) his

19   trial counsel rendered ineffective assistance; and (4) his appellate counsel rendered ineffective

20   assistance.[1]  The Court granted Petitioner's motion to stay this action while he returned to state

21   court to exhaust these claims.

22        On November 4, 2005, White filed his final state habeas petition with the California

23   Supreme Court, alleging the four claims this court found unexhausted.  On August 2, 2006, the

24   California Supreme Court denied that petition, citing In re Clark, 5 Cal.4th 750 (1993) and In re

25   Robbins, 18 Cal.4th 770, 780 (1998).  (Respondent's Ex. VIII).

26

27        [1]    Petitioner also claimed that his sentence of 25 years to life violated the Eighth
     Amendment.  Respondent did not contest this claim on his motion to dismiss, and this Court
28   construed this to mean that the parties agreed that the Eighth Amendment claim had been
     exhausted.  (See Order Granting Respondent's Motion to Dismiss, Docket #12 at 3 n.2).

United States District Court
For the Northern District of California

1       Petitioner then filed the instant amended federal habeas petition on September 19, 2006,

2   alleging that all claims have been exhausted in state court.

3       This Court issued an order directing Respondent to show cause why the writ should not

4   be granted as to the following claims:  (1) the trial court violated due process by abusing its

5   discretion in failing to strike Petitioner's prior serious felony convictions; (2) the trial court

6   abused its discretion by denying Petitioner's right to retained counsel in violation of the Sixth

7   Amendment; (3) Petitioner was denied his right to effective assistance of trial counsel in

8   violation of the Sixth Amendment; and (4) appellate counsel rendered ineffective assistance in

9   violation of Petitioner's rights under the Sixth and Fourteenth Amendments.  Although it was

10   not specifically set out in the Order to Show Cause, and for reasons explained more fully below,

11   this Court will also address Petitioner's claim that his sentence is unconstitutional in violation of

12   the Eighth Amendment.

13                     **II.  LEGAL STANDARD**

14       This court may entertain a petition for writ of habeas corpus "in behalf of a person in

15   custody pursuant to the judgment of a State court only on the ground that he is in custody in

16   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Rose</u>

17   <u>v. Hodges</u>, 423 U.S. 19, 21 (1975).

18       Because the instant petition was filed after April 24, 1996, it is governed by the

19   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, a district

20   court may not grant a petition challenging a state conviction or sentence on the basis of a claim

21   that was reviewed on the merits in state court unless the state court's adjudication of the claim

22   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

23   clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

24   resulted in a decision that was based on an unreasonable determination of the facts in light of the

25   evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

26       A state court decision is "contrary to" federal law if it applies a rule different from

27   controlling United States Supreme Court authority or comes to a different conclusion when

28

1   presented with a case involving materially indistinguishable facts. Bell v. Cone, 535 U.S. 685,

2   694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

3       A decision is an "unreasonable application" of Supreme Court law if the state court

4   identifies the correct legal standard but applies it in an unreasonable manner to the facts before

5   it. Id. "The 'unreasonable application' clause requires the state court decision to be more than

6   incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citing Williams, 529 U.S.

7   at 410, 412). "The state court's application of clearly established law must be objectively

8   unreasonable." Id. (citing Williams, 529 U.S. at 409). The "objectively unreasonable" standard

9   does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss

10  of clear error fails to give proper deference to state courts by conflating error (even clear error)

11  with unreasonableness." Id.

12      In determining whether habeas relief is warranted, this court looks to the "last reasoned

13  decision" of the state court to address the merits of a petitioner's claim. See Ylst v.

14  Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th

15  Cir. 2005). A federal court must presume correct any determination of a factual issue made by a

16  state court unless the petitioner rebuts the presumption of correctness by clear and convincing

17  evidence. 28 U.S.C. § 2254(e)(1).

### III.  DISCUSSION

**A.    Bias**

19  Petitioner claims that he was denied due process because the trial court allegedly abused

21  its discretion in failing to strike his prior serious felony convictions. Here, he argues that the

22  trial court failed to properly take into account his background and the nature of his prior

23  offenses. He also contends that the trial court was "prejudicially hostile" in denying his Romero

24  motion.

25  In People v. Superior Court (Romero), the California Supreme Court held that a trial

26  court retains its power under Cal. Penal Code section 1385 to strike a prior conviction for

27  purposes of the Three Strikes Law, i.e., California Penal Code section 667(b)-(i). 13 Cal. 4th

28  497, 53 Cal. Rptr. 2d 789, 808 (1996). White argues that the trial court abused its discretion

United States District Court
For the Northern District of California

5

when it declined to strike his prior serious felonies under <u>Romero</u> because (a) he was 18 years old when he committed the 1976 robbery offense that resulted in commitment to the California Youth Authority; (b) his present offense for selling cocaine base was not serious; (c) his prior felonies were remote; (c) he had a period of rehabilitation in his life; and (d) his most recent felonies were the product of his chronic, persistent addiction to drugs. These arguments raise only issues of state law which are not cognizable on federal habeas review. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire,</u> 502 U.S. 62, 67 (1991); <u>see, e.g.,</u> <u>Miller v. Vasquez,</u> 868 F.2d 1116, 1118-19 (9th Cir. 1989) (whether assault with deadly weapon qualifies as "serious felony" under California's sentence enhancement provisions, Cal. Penal Code §§ 667(a) and 1192.7(c)(23), is question of state sentencing law and does not state constitutional claim).

Petitioner nonetheless contends that he was denied due process because the trial judge was biased in the handling of his <u>Romero</u> motion. A federal court may vacate a state sentence imposed in violation of due process. <u>Walker v. Endell,</u> 850 F.2d 470, 476-77 (9th Cir. 1988). Nonetheless, "[s]entencing courts must have wide latitude in their decisions as to punishment." <u>Id</u>. at 476 (citing <u>Brothers v. Dowdle,</u> 817 F.2d 1388, 1390 (9th Cir. 1987)). Federal courts must defer to the state courts' interpretation of state sentencing laws. <u>See</u> <u>Bueno v. Hallahan,</u> 988 F.2d 86, 88 (9th Cir. 1993) (citing <u>Estelle,</u> 502 U.S. at 68). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." <u>Christian v. Rhode,</u> 41 F.3d 461, 469 (9th Cir. 1994).

A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." <u>Duckett v. Godinez,</u> 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted), <u>cert. denied,</u> 517 U.S. 1158 (1996). A state judge's conduct must be significantly adverse to a defendant before it

United States District Court

For the Northern District of California

1   violates constitutional requirements of due process and warrants federal intervention. See

2   Garcia v. Warden, Dannemora Correctional Facility, 795 F.2d 5, 8 (2d Cir. 1986). Judicial

3   rulings alone almost never constitute a valid basis for a bias or partiality motion. See Litkey v.

4   United States, 510 U.S. 540, 551 (1994).

5          Federal habeas relief is therefore limited to those instances where there is proof of actual

6   bias, or of a possible temptation so severe that one might presume an actual, substantial

7   incentive to be biased. See Del Vecchio v. Illinois Dep't of Corrections, 31 F.3d 1363, 1380

8   (7th Cir. 1994) (en banc), cert. denied, 514 U.S. 1037 (1995). "Supreme Court precedent

9   reveals only three circumstances in which an appearance of bias – as opposed to evidence of

10  actual bias – necessitates recusal." Crater v. Galaza, 491 F.3d 1119, 1131-32 (9th Cir. 2007).

11  These are: (1) when the judge has a direct, substantial pecuniary interest in reaching a

12  conclusion against one of the litigants; (2) when the judge becomes embroiled in a running,

13  bitter controversy with one of the litigants; and (3) when the judge acts as part of the accusatory

14  process. Id. at 1131 (citations omitted).

15         In this case, there is no suggestion of actual or apparent bias. The record reflects that (a)

16  without the prosecution's plea offer, Petitioner faced a sentence of 75 years to life; (b) Petitioner

17  voluntarily and knowingly accepted the plea offer, with the result that he faced a sentence of 25

18  years to life; and (c) he knowingly and voluntarily submitted the case to the trial judge to make

19  determinations as to guilt and sentencing. (Respondent's Ex. IX at 37-47; Ex. XII at 70).

20         The California Court of Appeal, which provided the last reasoned decision on this issue,

21  reviewed the transcript of the resentencing hearing and found no impropriety:

22              As to the court's alleged "hostility," we have reviewed the transcript
            of the resentencing hearing and fail to discern any impropriety. The court
23          explained the basis of its ruling striking the assault prior – our prior
            decision required it – but there is nothing "acerbic[]" that appears on the
24          face of the transcript.

25              White further argues that the court demonstrated hostility by cutting
            defense counsel off when he tried to point to authorities supporting his
26          position regarding presentence credits. Again, we see nothing untoward on
            the face of the transcript. The trial court explained its view that it was
27          without jurisdiction to award the credits in issue. Defense counsel then
            asserted that there "is a debate among the courts of appeal as to that." The
28          trial court responded simply, "I know that. Thank you very much." From
            the transcript it appears defense counsel was satisfied with that response,

7

1  but even assuming he was not, the trial court was under no obligation to
2  take further argument on an issue it believed it already understood.  We see
   no hostility or other evidence in the record that the trial court's decision
   was irrational or arbitrary.
3

4  (Respondent's Ex. III at 6-7).  Based upon review of the underlying record, this Court finds that

5  the state appellate court's determination was not contrary to, or an unreasonable application of,

6  clearly established Supreme Court precedent, nor was it based on an unreasonable determination

7  of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).  Accordingly, this

8  claim is denied.

9  **B.   Eighth Amendment**[2]

10       Petitioner nonetheless argues that his sentence of 25 years to life in state prison

11 constitutes cruel and unusual punishment in violation of his rights under the Eighth

12 Amendment.

13       For purposes of federal habeas review under 28 U.S.C. § 2254(d)(1), it is clearly

14 established that "[a] gross proportionality principle is applicable to sentences for terms of

15 years." Andrade, 538 U.S. at 72.  But the precise contours of the principle are unclear, and

16 "applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73 (quoting Harmelin v.

17 Michigan, 501 U.S. 957, 1001 (1991)).  Thus, the "principle reserves a constitutional violation

18 for only the extraordinary case." Id. at 76.  A criminal sentence proportionate to the crime for

19 which the defendant was convicted does not violate the Eighth Amendment. See Solem v.

20 Helm, 463 U.S. 277, 303 (1983) (a sentence of life imprisonment without the possibility of

21 parole for a seventh nonviolent felony violates the Eighth Amendment).  *"[S]uccessful*

22 challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90.

23 Since Harmelin, 501 U.S. 957, only extreme sentences that are "grossly disproportionate" to the

24 crime violate the Eighth Amendment. United States v. Carr, 56 F.3d 38, 39 (9th Cir. 1995).

25

26       [2]      Although this claim was not expressly included in this Court's September 6,
   2007 Order to Show Cause, the record reflects that the claim was presented to the California
27 Court of Appeal, which denied the claim in a reasoned opinion, and to the California
   Supreme Court, which issued a summary denial.  (Respondent's Exs. III, IV and XVII).
28 Inasmuch as Respondent has addressed this claim in his papers, this court will address the
   claim on the merits here.

United States District Court
For the Northern District of California

1    Petitioner was sentenced to 25 years to life in state prison for the current offense of

2    selling cocaine base and for two prior convictions of robbery.  This Court looks to the "last

3    reasoned decision" of the state court to address the merits of Petitioner's claim – here, the

4    California Court of Appeal.  See Ylst, 501 U.S. at 803-04; Barker, 423 F.3d at 1091-92.  The

5    state appellate court reviewed Petitioner's prior convictions and made the following findings:

6        The record . . . reveals that White's rehabilitation was brief, at best.  While
         the record is unclear as to exactly when White was released from the
7        California Youth Authority after his 1976 robbery conviction, it could not
         have been too many years before White was convicted in 1980 of
8        receiving stolen property. [footnote omitted].  White then apparently did
         experience a time period in which he was gainfully employed and stayed
9        out of trouble, but in 1986 he was convicted of armed robbery.  The trial
         court in that case stayed the sentence on the firearm enhancement,
10       apparently because the gun was unloaded, but as the trial court in this case
         noted, that does not change the fact that White used a gun.  White was
11       paroled in 1988, and within a few months was convicted of transporting a
         controlled substance for sale, a felony.  White was paroled again in 1990,
12       but violated parole in 1991.  In 1993, White was convicted of felony
         possession of a controlled substance and sentenced to two years in prison.
13       White apparently was still on parole after that offense when he committed
         the present offense.
14

15   (Respondent's Ex. III at 7-8)

16       In rejecting Petitioner's claim, the California Court of Appeal concluded:

17       White contends his sentence constitutes cruel and/or unusual
         punishment in violation of the Eighth Amendment to the United States
18       Constitution and article I, section 17 of the California Constitution.  White
         acknowledges that the courts have repeatedly found sentences under the
19       three strikes law of 25 years to life to be constitutional even where the third
         strike is not violent. (e.g., People v. Martinez, supra, 72 Cal.App.4th;
20       People v. Barrera, supra, 70 Cal.App.4th.)

21       White seeks to distinguish his case by arguing that his criminal
         history is less extensive and continuous.  As we set forth above, though,
22       White has not gone crime-free for any period of great length.  White is not
         substantially different from the defendant in Barrera, of whom the court
23       said, "neither his personal efforts nor his involvement with the criminal
         justice system served to effect his rehabilitation; he persisted in reoffending
24       as soon as he was released from custody." (People v. Barrera, supra, 70
         Cal.App.4th at p. 555.)
25

26       Additionally, we are not persuaded that White's present crime is as
         innocuous as White characterizes it to be.  White was not convicted of
27       merely possessing cocaine for his own use, but of selling it, which poses a
         clear danger to others.  The fact that White happened to sell to an
28       undercover officer may mean this particular act caused no harm, but it in no
         way diminishes the threat of harm intrinsic to what White was attempting
         to do.

9

**United States District Court**

For the Northern District of California

1
2
3

> We acknowledge, as we have before, that the three strikes scheme is among the most extreme in the nation. (*Martinez, supra,* 71 Cal.App.4th at p. 1516.) That, however "does not compel the conclusion that it is unconstitutionally cruel or unusual." (*Id.*) On the whole record here, we cannot conclude that White's sentence is unconstitutional.

4   (Respondent's Ex. III at 8-9).

5   Longer sentences than Petitioner's for less serious crimes than those of which he has

6   been convicted have been held not to be "grossly disproportionate" under the Eighth

7   Amendment. See, e.g., Ewing v. California, 538 U.S. 11, 24-25 (2003) (sentence of 25 years to

8   life for conviction of grand theft with prior convictions was not grossly disproportionate);

9   Harmelin, 501 U.S. at 1005 (mandatory sentence of life without the possibility of parole for a

10   first offense of possession of 672 grams of cocaine did not raise an inference of gross

11   disproportionality); Rummel v. Estelle, 445 U.S. 263, 284-85 (1980) (upholding life sentence

12   with the possibility of parole for recidivist convicted of fraudulent use of a credit card for $80,

13   passing a forged check for $28.36 and obtaining $120.75 under false pretenses); Taylor v.

14   Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding sentence of 25 years to life for

15   possession of .036 grams of cocaine where petitioner served multiple prior prison terms and his

16   prior offenses involved violence and crimes against a person); Alford v. Rolfs, 867 F.2d 1216,

17   1221-23 (9th Cir. 1989) (upholding a life sentence with the possibility of parole for possession

18   of stolen property worth $17,000 and having three prior non-violent convictions, including

19   possession of a controlled substance and forgery).

20   In view of this authority, Petitioner's sentence does not violate the Eighth Amendment's

21   prohibition against cruel and unusual punishment so as to warrant habeas relief, and the state

22   appellate court's determination was not contrary to, or an unreasonable application of, clearly

23   established Supreme Court precedent, nor was it based on an unreasonable determination of the

24   facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).  Accordingly, this claim is

25   denied.

26
27
28

**C.      Substitution of Counsel**

Petitioner contends that his Sixth and Fourteenth Amendment rights were violated when the trial court denied his Marsden[3] motion to discharge his court-appointed counsel.  White raised this claim for the first time in a habeas petition to the California Superior Court.  As noted above, on January 30, 2001, that court, in a reasoned opinion relying primarily on In re Harris, 5 Cal.4th 813 (1993) and In re Dixon, 41 Cal.2d 756 (1953), concluded that the claim was procedurally barred because Petitioner could have, but did not, raise it on direct appeal.[4] (Respondent's Ex. V).  As such, Respondent contends that this claim is procedurally defaulted and that Petitioner has not established any grounds for relief in any event.

**1.      Procedural Default**

The procedural default doctrine forecloses federal review of a state prisoner's federal habeas claims if the decision rests on a state law ground that is independent of the federal question and adequate to support the judgment.  See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  The "independence" of a state procedural rule is determined at the time when it is applied.  See Park v. California, 202 F.3d 1146, 1152-53 (9th Cir.2000).  Whether a procedural rule is "adequate" is determined at the time of a petitioner's default.  See Fields v. Calderon, 125 F.3d 757, 760-61 (9th Cir. 1997).

Procedural default is an affirmative defense as to which the state bears the burden of proof.  Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003).  "Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."  Id.  If the petitioner satisfies his burden, then the state bears the ultimate burden of proving that the bar is applicable in a given case – i.e., that the state procedural bar in question was sufficiently clear,

---

[3]      People v. Marsden, 2 Cal.3d 118, 465 P.2d 44, 84 Cal.Rptr. 156 (1970).

[4]      The Dixon rule provides that "habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction."  Dixon, 41 Cal.2d at 759, 264 P.2d 513.

1    well-established and consistently applied at the time of the petitioner's purported default. Id.;

2    Calderon v. United States Dist. Court (Bean), 96 F.3d 1126, 1129 (9th Cir.1996).

3            In this case, Respondent did not, in his Answer, assert procedural default based on an

4    independent and adequate state procedural rule. Instead, he says that Petitioner's claim "is

5    barred due to procedural default in the state court since no cause and prejudice exists for the

6    default and the failure to consider the claim does not result in a fundamental miscarriage of

7    justice." (See Answer to Order to Show Cause at 3:6-8). Nevertheless, in his Memorandum of

8    Points and Authorities, Respondent (a) asserts that the California Superior Court, citing to

9    Dixon, found plaintiff's claim barred because it was not raised on direct appeal; and (b) cites

10   Coleman, 501 U.S. at 750, for the proposition that federal habeas review is barred where the

11   state court's decision rests on a state rule that is independent and adequate to support the

12   judgment. (See Respondent's Mem. of P&A at 9). Accordingly, the Court construes

13   Respondent's papers to raise a procedural default defense based on the Dixon rule.

14           The burden then shifts to White to place the defense in issue. Bennett, 322 F.3d at 586.

15   "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate

16   the inadequacy of the state procedure, including citation to authority demonstrating inconsistent

17   application of the rule." Id. Simply contesting the adequacy of a state rule will satisfy

18   petitioner's burden of proof under Bennett where the rule has previously been found too

19   ambiguous to amount to a procedural bar. King v. LaMarque, 464 F.3d 963, 966-67 (9th Cir.

20   2006).

21           The Ninth Circuit has reserved the question whether Dixon is an independent state

22   procedural bar to federal habeas review. Park, 202 F.3d at 1152-53.[5] And, it has found that the

23

24           [5]     In In re Robbins, 18 Cal. 4th 770 (1998), the California Supreme Court stated
     that prior to 1998 it necessarily addressed fundamental constitutional claims when applying
25   the Dixon rule. See Park, 202 F.3d at 1152-53. Accordingly, a California court's invocation
     of the Dixon rule cannot be the basis for a procedural default in federal court, at least when
26   the bar was applied before Robbins was decided. See id. at 1153. In Robbins, the California
     Supreme Court adopted "a stance from which it will now decline to consider federal law
27   when deciding whether claims are procedurally defaulted." Id. at 1152 (citing In re Robbins,
     18 Cal. 4th at 811-12). The Ninth Circuit noted that Robbins' approach was prospective, but
28   reserved the question whether Robbins established the independence of the Dixon rule for the
     future. Id. And, the mere fact that the California Supreme Court stated in Robbins that it

1 | Dixon rule was not adequate to bar habeas review before or shortly after the California Supreme

2 | Court decided In re Harris, 5 Cal. 4th 813, 828 n.7 (1993).  See Fields, 125 F.3d at 765.  Here,

3 | Petitioner contends that federal review of his claim cannot be barred because the trial court's

4 | alleged error violated his Sixth Amendment right, and it would be fundamentally unfair to

5 | preclude review of this claim because his appellate counsel allegedly was deficient in failing to

6 | raise the Marsden issue on direct appeal.[6]  (See Traverse at 7, 16).  Liberally construing his

7 | traverse, this Court finds that he has put Respondent's defense of a procedural bar at issue.

8 | However, Respondent has not attempted to meet his burden of showing that the Dixon

9 | bar is "adequate" – i.e., well-established and consistently applied in habeas actions after 1993.

10 | Instead, he proceeds to address the merits of Petitioner's claim.  Accordingly, this Court cannot

11 | conclude that the application of the procedural rule in question is sufficient to preclude the

12 | consideration of Petitioner's claim on the merits.[7]  Because no state court reached Petitioner's

13 | claim on the merits, this Court reviews it de novo.  See Pirtle v. Morgan, 313 F.3d 1160, 1167-

14 | 68 (9th Cir. 2002).

15 | **2.  Petitioner's Motion to Substitute Counsel**

16 | Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the

17 | right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  This

18 | includes a qualified right of the criminal defendant to have the counsel of his choice if he can

21 | would thenceforth consistently apply a new procedural rule is not sufficient to establish that
22 | the rule, in fact, has been consistently applied since Robbins.  See Bennett, 322 F.3d at 583.

23 | [6]   White's claims as to the alleged ineffective assistance of counsel are discussed more fully below.

24 | [7]   Respondent does not address the California Supreme Court's denial of
25 | White's fourth and final state habeas petition, in which it cites In re Clark, 5 Cal.4th 750 (1993) and In re Robbins, 18 Cal.4th 770, 780 (1998).  Nevertheless, even if he had, this
26 | Court's conclusion would be the same.  The Ninth Circuit has previously "conclude[d] that because the California untimeliness rule is not interwoven with federal law, it is an
27 | independent state procedural ground, as expressed in Clark/Robbins."  Bennett, 322 F.3d at 581.  However, the Ninth Circuit has also held that the timeliness rule expressed in
28 | Clark/Robbins is not adequate because it is ambiguous and inconsistently applied.  King, 464 F.3d at 966-68.  As noted above, Respondent has made no effort to prove the adequacy of any procedural rule.

1    pay for it and counsel is willing to serve. See Wheat v. United States, 486 U.S. 153, 159, 164

2    (1988).  This right is qualified in that it "may be overcome by 'a showing of a serious potential

3    for conflict,'" or that the proposed choice will interfere with the integrity of the proceeding. See

4    id. at 164; see also United States v. Stites, 56 F.3d 1020, 1024 (9th Cir. 1995).  Where the right

5    to be assisted by counsel of one's choice is wrongly denied, it is unnecessary to conduct an

6    ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. United States v.

7    Gonzalez-Lopez, 548 U.S. 140, 147 (2006) (holding that defendant who was erroneously denied

8    his choice of counsel was not required to show that substitute counsel was ineffective within the

9    meaning of Strickland v. Washington, 466 U.S. 668, 686 (1984)).

10        Nevertheless, the "right to choose one's own counsel is circumscribed in several

11    important respects." Wheat, 486 U.S. at 159.  "A defendant does not have the right to be

12    represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent

13    the defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself)

14    who is not a member of the bar." Miller v. Blacketter, 525 F.3d 890, 895 (9th Cir. 2008) (citing

15    Wheat, 486 U.S. at 159).  "In addition, the Court has established that a trial court requires 'wide

16    latitude in balancing the right to counsel of choice against the needs of fairness, and against the

17    demands of its calendar.'" Id. (quoting Gonzalez-Lopez, 548 U.S. at 152).  "As such, trial

18    courts retain the discretion to 'make scheduling and other decisions that effectively exclude a

19    defendant's first choice of counsel.'" Id. (quoting Gonzalez-Lopez, 548 U.S. at 152).  "[O]nly

20    [a trial court's] unreasoning and arbitrary 'insistence upon expeditiousness in the face of a

21    justifiable request for delay' violates the Sixth Amendment." Id. at 897 (quoting Morris v.

22    Slappy, 461 U.S. 1, 11-12 (1983)).

23        In this case, Deputy Public Defender Bernard Saucedo was appointed to represent

24    Petitioner.  A preliminary examination was held on May 12, 1995, and trial was set to begin on

25    July 10, 1995.  (Respondent's Ex. XII at 1, 54).  On July 12, 1995, Saucedo secured a

26    continuance in order to complete investigation of the case.  (Id. at 56-61).  The matter was

27    continued several times thereafter on the court's master trial calendar.  (Respondent's Ex. XII at

28    62-66).  The case was then assigned for a jury trial to begin on September 26, 1995.  (Id. at 67).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   It was only on the day trial was set to begin that White expressed dissatisfaction with his

2   representation and orally moved to discharge the public defender. (Respondent's Ex. IX). The

3   trial judge promptly inquired into White's complaints about Saucedo, giving Petitioner and

4   Saucedo an opportunity to address Petitioner's dissatisfaction. See Plumlee v. Masto, 512 F.3d

5   1204, 1211 (9th Cir. 2008) ("Under our precedents . . . [the trial court] had a duty to inquire into

6   the problems with counsel when they were first raised , and he did so.") (citing Schell v. Witek,

7   218 F.3d 1017, 1025-26 (9th Cir. 2000) (en banc)).

8   While a serious, objectively grounded conflict may warrant substitution of counsel even

9   on the eve of trial, see Daniels v. Woodford, 428 F.3d 1181, 1200 (9th Cir. 2005), the record

10   reveals no such conflict here. See Larson v. Palmateer, 515 F.3d 1057, 1066-67 (9th Cir. 2008)

11   (no relief under AEDPA for defendant who did not argue counsel had either an actual or

12   apparent conflict of interest, and instead complained only about lack of communication with

13   counsel and counsel's strategic decisions, including not making motions defendant requested,

14   contacting witnesses without defendant's consent, and not providing defendant with a defense

15   witness list for his approval). Instead, Petitioner asserted that he had not sold drugs to the

16   undercover officer and that he was not shown a warrant before he was arrested. He complained

17   that he had only spoken with Saucedo a few times in the seven months since his arrest and

18   believed that Saucedo had not done anything in those seven months to fight the charges.

19   (Respondent's Ex. IX at 5-13). Saucedo remarked that there was strong identification evidence

20   based on three hand-to-hand drug sales. (Id. at 8). He confirmed that, other than getting

21   Petitioner appropriate clothes, there was nothing more to do to prepare for the trial. (Id. at 15).

22   The trial court reasonably concluded that Saucedo was prepared for trial. The trial judge

23   noted that Saucedo was "a very competent public defender" who had "been practicing for a long

24   time." (Id. at 5). The trial judge further observed that, although Saucedo could not change the

25   facts as to Petitioner's record of prior convictions, he had gotten all but one charge dropped,

26   with the result that Petitioner faced 25 years to life (as opposed to 75 years to life). (Id. at 14).

27   Noting that Petitioner had seven months to hire an attorney, the trial judge denied Petitioner's

28   motion stating, "Because I will tell you, Mr. White, the time is down for trial. I think Mr.

1    Saucedo has done the best that anybody is going to do for you, and it's time for trial." (Id. at

2    14).

3         Although Petitioner asserted that he had secured funds to hire a new attorney, he had not

4    yet retained another lawyer to take Saucedo's place. Indeed, when the trial court asked which

5    attorney Petitioner wished to retain, White said that he did not know who the attorney was and

6    could not provide a name. Further, he indicated that the (unidentified) attorney was out of town

7    that week. (Id. at 12). The next day, Petitioner renewed his motion to discharge Saucedo and

8    requested a 30-day continuance in which to obtain a new attorney. He reiterated that the Public

9    Defender's Office had done nothing to defend him and further asserted that Saucedo had told

10   him that there was nothing Petitioner could do but plead guilty. (Id. at 22). Referencing the

11   prior trial continuances, Petitioner said that he was not able to properly investigate the hiring of

12   private counsel because he had not been given a firm trial date. (Id.). Although he identified a

13   potential new attorney as "Penny Cooper," there was nothing to indicate that Cooper was willing

14   or available to represent White. Even assuming Petitioner had secured new counsel, it was not

15   clear how much time would be needed for a new attorney to prepare for trial. Here, Petitioner

16   stated only that he was not able to ascertain Cooper's availability for trial because Cooper

17   reportedly did not get back from work until after midnight and did not return Petitioner's

18   telephone call. (Id. at 23).

19        Based on review of the underlying record, this Court concludes that the trial court's

20   decision to deny Petitioner's motion to discharge the public defender and to continue the trial

21   did not exceed the trial judge's discretion to balance Petitioner's right to counsel of choice

22   against concerns of fairness and scheduling. See Gonzalez-Lopez, 548 U.S. at 151-52; see also

23   Wheat, 486 U.S. at 163 (no Sixth Amendment violation where defendant moved to substituted

24   his counsel two days before trial and the court did not exceed its "substantial latitude in refusing

25   waivers of conflicts of interest" by relying on its instinct and experience in denying the motion);

26   Morris, 461 U.S. at 12-13 (trial court did not violate defendant's right to counsel in denying his

27   motion for a continuance to allow more preparation time by his new public defender, who

28   replaced the original public defender six days before trial, where the new attorney was found

United States District Court
For the Northern District of California

16

United States District Court
For the Northern District of California

1   prepared for trial); <u>Miller</u>, 525 F.3d at 896-98 (denial of public defender's motions to withdraw

2   and to continue the trial so that petitioner could retain a private attorney did not violate

3   petitioner's Sixth Amendment right to choice of counsel because (1) petitioner had not yet

4   retained a new attorney, (2) public defender was sufficiently prepared for trial, and (3) motions

5   were made the morning trial was set to begin); <u>United States v. Garrett</u>, 179 F.3d 1143, 1145-47

6   (9th Cir. 1999) (en banc) (defendant's Sixth Amendment right to counsel was not abridged

7   where the trial court denied a continuance on the eve of trial because the trial court had

8   scrupulously respected the defendant's right to counsel by taking great care over a year-long

9   period of appointing different attorneys, holding hearings on defendant's request to proceed pro

10   se, and explaining to the defendant all the consequences of his decisions to proceed pro se).

11   **D.      Ineffective Assistance of Counsel**

12          White first argued ineffective assistance of his trial and appellate counsel in his second

13   state habeas petition, which he filed with the California Court of Appeal. That court summarily

14   denied the petition without explanation or citation to authority. (Respondent's Ex. VI).

15   Petitioner next raised these claims in a state habeas petition filed with the California Supreme

16   Court. That court denied the petition, citing <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949) and <u>In re</u>

17   <u>Robbins</u>, 18 Cal.4th 770, 780 (1998). (Respondent's Ex. VII). After this Court dismissed

18   Petitioner's first federal habeas petition for failure to exhaust, White presented these claims in

19   his fourth and final state habeas petition to the California Supreme Court, which denied the

20   petition, citing <u>In re Clark</u>, 5 Cal.4th 750 (1993) and <u>In re Robbins</u>, 18 Cal.4th 770, 780 (1998).

21   (Respondent's Ex. VIII).

22          Respondent does not contend that these claims are procedurally defaulted. Accordingly,

23   this Court will address these claims on the merits.

24          **1.      Trial Counsel**

25          Petitioner claims that his trial counsel rendered ineffective assistance by (a) failing to

26   investigate the credibility of statements made by police officers in the police reports about his

27   arrest (e.g., by interviewing witnesses and visiting the residence where Petitioner was arrested);

28   and (b) not filing any motions to suppress the evidence of cocaine base.

United States District Court

For the Northern District of California

1    A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

2    Sixth Amendment, which guarantees not only assistance, but effective assistance of counsel.

3    Strickland v. Washington, 466 U.S. 668, 686 (1984).  The right to effective assistance of

4    counsel applies to the performance of both retained and appointed counsel without distinction.

5    See Cuyler v. Sullivan, 446 U.S. 335, 344-45 (1980).  "The benchmark for judging any claim of

6    ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

7    adversarial process that the trial cannot be relied upon as having produced a just result."

8    Strickland, 466 U.S. at 686.  In order to establish a claim for ineffective assistance of counsel,

9    petitioner must show that (1) counsel's representation fell below an objective standard of

10   reasonableness; and (2) that he was prejudiced by the error, i.e., that there is a reasonable

11   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

12   been different.  Id. at 688, 694.  Conclusory allegations that counsel was ineffective do not

13   warrant relief.  Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995).

14   "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court

15   must indulge a strong presumption that counsel's conduct falls within the wide range of

16   reasonable professional assistance . . . ."  Id. at 689.  A court need not determine whether

17   counsel's performance was deficient before examining the prejudice suffered by the defendant

18   as the result of the alleged deficiencies.  See id. at 697; Williams v. Calderon, 52 F.3d 1465,

19   1470 & n. 3 (9th Cir.1995), cert. denied, 516 U.S. 1124 (1996).

20   In this case, Petitioner has not shown that his trial counsel's performance was

21   constitutionally deficient.  White argues that Saucedo should have visited the house where the

22   arrest took place to (a) rebut the officers' observations as to defendant's position when they

23   entered the house and (b) to show that the officers "flagrantly falsified their report" as to how

24   the cocaine base was obtained.  He also asserts that Saucedo should have moved to suppress the

25   evidence of cocaine base.  However, the relevant inquiry is not what defense counsel could have

26   done, but rather whether the choices made by defense counsel were reasonable.  See Babbitt v.

27   Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  Here, the record shows that, at the preliminary

28   hearing, Saucedo cross-examined the undercover officer about the three hand-to-hand sales of

1   cocaine base, as well as the arresting officer as to what he saw when he entered the premises.

2   (Respondent's Ex. XII at 16-23, 28-36). Petitioner has not articulated what other or different

3   facts Saucedo would have discovered by visiting the scene of the arrest and interviewing

4   witnesses. Nor has he identified facts showing that the cocaine base was obtained illegally,

5   even though the officers had a search warrant for the premises (see Respondent's Ex. IX at 28:9-

6   12). This Court is unpersuaded that the prospects of success on a motion to suppress were such

7   that counsel's failure to bring such a motion constituted a Sixth Amendment violation. Even

8   assuming, for the sake of argument, that counsel's performance was deficient, Petitioner has not

9   demonstrated that but for the alleged error, the result of the proceeding would have been

10  different – i.e., that he would have rejected the deal to proceed with a court trial as to one charge

11  on stipulated facts (with a sentence of 25 years to life) and would have insisted on proceeding

12  with a jury trial on all charges (with the prospect of a significantly longer sentence of 75 years to

13  life). This claim is denied.

14          **2.     Appellate Counsel Carroll**

15          Petitioner next asserts that his appellate counsel, Paul Carroll, rendered ineffective

16  assistance because he did not raise the Marsden issue to substitute counsel on appeal in White I.

17          The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant

18  the effective assistance of counsel on his first appeal as of right. See Evitts v. Lucey, 469 U.S.

19  387, 402 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to

20  the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882

21  F.2d 1428, 1433 (9th Cir. 1989) (citing United States v. Birtle, 792 F.2d 846, 847 (9th Cir.

22  1986)). A defendant therefore must show that counsel's performance fell below an objective

23  standard of reasonableness and that there is a reasonable probability that, but for counsel's

24  unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9

25  (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).

26          Petitioner has not shown that Carroll was constitutionally deficient under Strickland for

27  failing to raise the substitution of counsel issue. Indeed, Carroll won the appeal in White I: the

28  state appellate court concluded that one of Petitioner's prior convictions should be stricken,

19

United States District Court

For the Northern District of California

1    vacated the judgment, and remanded to allow the trial court to exercise its discretion whether to

2    strike one or both of Petitioner's other prior convictions. (Respondent's Ex. I).  White has not

3    explained, much less demonstrated, how the result would have been better if the substitution of

4    counsel issue had been raised.  As discussed above, the trial court's decision to deny Petitioner's

5    <u>Marsden</u> motion did not violate his constitutional rights.  In any event, appellate counsel does

6    not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  <u>See</u>

7    <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027, 1045 (9th

8    Cir. 1997); <u>Miller</u>, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely

9    recognized as one of the hallmarks of effective appellate advocacy.  <u>See Miller</u>, 882 F.2d at

10   1434.  Appellate counsel therefore will frequently remain above an objective standard of

11   competence and have caused his client no prejudice for the same reason--because he declined to

12   raise a weak issue.  <u>Id</u>.  This claim is denied.

13        **3.    Appellate Counsel Pori**

14        Petitioner argues that appellate counsel Brian Pori rendered ineffective assistance in

15   <u>White III</u>[8] because he allegedly failed to review the trial court transcripts and filed an opening

16   brief from <u>White I</u>.  Petitioner's assertions are not corroborated by the record.  Pori's briefs

17   indicate that counsel reviewed the court transcripts from both prior appeals and the record

18   prepared in <u>White III</u>.  (Respondent's Ex. XVII).  Moreover, there is nothing to suggest that Pori

19   merely re-filed an opening brief from <u>White I</u>.  Even assuming Pori did not review court

20   transcripts, Petitioner has not identified what transcripts Pori failed to review, much less

21   demonstrated how that conduct prevented him from prevailing on appeal.  Based on review of

22   the underlying record, Petitioner has not shown that Pori was constitutionally deficient under

23   <u>Strickland</u>.

24

25

26

27    _____

28        [8]    Although Petitioner indicates that Pori served as appellate counsel in <u>White II</u>,
      the record reflects that Carroll was the appellate attorney in <u>White I</u> and <u>White II</u> and that
      Pori acted as appellate counsel in <u>White III</u>.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.  ORDER

The court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings.  Accordingly, the petition for writ of habeas corpus is denied.  The clerk shall enter judgment and close the file.

Dated: September 17, 2008

JAMES WARE
UNITED STATES DISTRICT JUDGE